1998 SD 59

**Cynthia HARTER, Plaintiff and Appellee,**

v.

**PLAINS INSURANCE COMPANY, INC., Defendant and Appellant.**

Nos. 20180, 20187.

Supreme Court of South Dakota.

Argued April 28, 1998.

Decided June 10, 1998.

---

Rodney C. Lefholz, Rapid City, for plaintiff and appellee.

Thomas G. Fritz and Steven J. Morgans of Lynn, Jackson, Shultz & Lebrun, Rapid City, for defendant and appellant.

SABERS, Justice.

[¶ 1.] Insured sued Insurer, claiming it acted in bad faith by failing to tender the policy limits of her underinsured motorist policy. The jury awarded Insured $25,000 in compensatory damages and $75,000 in punitive damages. Insurer appeals the trial court's denial of its motions for new trial and judgment notwithstanding the verdict. We affirm.

## FACTS

[¶ 2.] Cynthia Harter was injured in a traffic accident caused by Jacki Hollingsworth in 1989. Prior to the accident, Harter purchased underinsured motorist coverage from Plains Insurance Co., Inc. (Plains). Underinsured motorist coverage protects the insured when the driver at fault has insufficient insurance to pay the damages incurred by the injured party. In 1992, Hollingsworth's insurance company (All Nations) offered to pay Harter $25,000, the policy limits of Hollingsworth's liability coverage. Soon thereafter, Harter demanded from Plains the policy limits of her underinsured motorist policy. Plains offered to pay Harter $15,000.

[¶ 3.] Plains would not allow Harter to release Hollingsworth from further liability, a condition required by All Nations' offer of $25,000. Harter did not respond to the $15,000 offer from Plains and proceeded to trial against Hollingsworth in Meade County. Harter then filed suit against Plains in Pennington County, claiming it acted in bad faith by refusing to pay the balance of $75,000.[1] Plains was successful in causing the trial court to stay the bad faith lawsuit until the suit against Hollingsworth was over.

[¶ 4.] Plains then intervened in Harter's suit against Hollingsworth. Before the jury reached its verdict, Plains offered $75,000 to Harter. Harter alleges that the offer was conditioned on dismissal of her bad faith lawsuit. Harter refused the offer. The Hollingsworth jury awarded Harter $275,000 in damages. Plains' motions for judgment notwithstanding the verdict and new trial were denied.

[¶ 5.] The bad faith lawsuit against Plains went to trial, where Harter argued that Plains acted in bad faith by 1) failing to properly investigate Harter's claim; 2) failing to waive its subrogation right against Hollingsworth; 3) intervening in the Hollingsworth trial; 4) contesting liability in the Hollingsworth trial; 5) conditioning its offer on dismissal of the bad faith lawsuit; and 6) causing the bad faith lawsuit to be stayed until the Hollingsworth trial was over.

[¶ 6.] The names are relevant in this case. In order to aid the reader and avoid confusion, the parties and their attorneys are listed here:

### FIRST TRIAL

| | |
|---|---|
| Plaintiff Harter | Rodney Lefholz |
| Defendant Hollingsworth & All Nations | Samuel Kerr |
| Intervenor Plains | William May |

### SECOND TRIAL

| | |
|---|---|
| Plaintiff Harter | Rodney Lefholz |
| Defendant Plains | Thomas Fritz & Steven Morgans |

### APPEAL

| | |
|---|---|
| Appellant Plains | Thomas Fritz & Steven Morgans |
| Appellee Harter | Rodney Lefholz |

[¶ 7.] Plains made a motion to disqualify Lefholz so he could testify as a material witness regarding the investigation and evaluation of Harter's claim and the offers made by Plains. The trial court denied that request. The trial court also denied Plains' motion for mistrial, which motion was based on Plains' claim that Lefholz violated a pretrial ruling during opening statement to the jury by using "emotional overtones" in referring to Plains as "fat and sassy" and as "a company that cares about profits but not about people ... that cares about money but not about keeping promises."

[¶ 8.] The jury awarded Harter $25,000 in compensatory damages and $75,000 in punitive damages. Plains' motions for judgment notwithstanding the verdict and new trial were denied. Plains appeals, arguing the trial court erred by:

1) allowing Harter to argue to the jury that Plains acted in bad faith by refusing to waive its subrogation right against Hollingsworth and intervening in the Hollingsworth trial;

2) denying Plains' motion to disqualify Lefholz and name him as a witness;

3) denying Plains' motion for mistrial, which motion was based on Plains' claim that Lefholz made inflammatory remarks in violation of a pretrial ruling; and

---

1. Although the policy provided $100,000 coverage, its terms provided that Plains was entitled to a credit for the $25,000 Harter received from All Nations.

4) allowing an award of punitive damages.

By notice of review, Harter claims the trial court erred by

5) refusing to instruct the jury that it could award Harter an amount equal to the Hollingsworth verdict of $275,000, less amounts covered by insurance.

## STANDARD OF REVIEW

■ [¶ 9.] Our standard of review on a motion for new trial is well-established:

Whether a new trial should be granted is left to the sound judicial discretion of the trial court, and this Court will not disturb the trial court's decision absent a clear showing of abuse of discretion. If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial. We determine that an abuse of discretion occurred only if no judicial mind, in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion.

*Schuldies v. Millar,* 1996 SD 120, ¶ 8, 555 N.W.2d 90, 95 (citation omitted). Likewise, the trial court's ruling on a motion for judgment notwithstanding the verdict is reviewed by the abuse of discretion standard. *Treib v. Kern,* 513 N.W.2d 908, 914 (S.D.1994). We give great deference to the· trial court and the jury with regard to findings of fact and credibility determinations, but we review questions of law de novo, with no deference given to the trial court's legal conclusions. *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771.

[¶ 10.] **1. WHETHER THE TRIAL COURT ERRED BY ALLOWING HARTER TO ARGUE THAT PLAINS ACTED IN BAD FAITH IN ASSERTING ITS SUBROGATION RIGHT AND INTERVENING IN THE HOLLINGSWORTH TRIAL.**

■ [¶ 11.] The trial court denied Plains' motions in limine to prevent Harter from introducing evidence that Plains acted in bad faith by asserting its subrogation right and intervening in the Hollingsworth trial. The motions were premised on two statutes: SDCL 58–11–9.6, which provides in part:

The issuer of the underinsured motorist coverage is subrogated to any amounts the insurer so pays and, upon payment, has an assignment of the judgment against the other party to the extent of the money paid. *Refusal of the issuer of the underinsured motorist coverage to waive its statutory right of subrogation does not constitute bad faith.*

(Emphasis added); and SDCL 15–6–24(a):

Upon timely application anyone shall be permitted to intervene in an action:

(1) When a statute of the state confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Plains argues that the trial court erred as a matter of law in allowing this evidence and these arguments as contrary to these statutes.

[¶ 12.] Harter concedes that Plains' retention of its subrogation right does not constitute bad faith; however, she claims that Plains asserted its right to subrogation, not to seek reimbursement, but to intervene in the Hollingsworth trial and contest liability even though Plains already acknowledged Harter was not at fault. Therefore, Harter claims, asserting its subrogation right and intervening in the trial was evidence of Plains' bad faith in attempting to avoid payment under the policy.

■ [¶ 13.] For us to disturb the evidentiary rulings of the trial court, we must determine that an abuse of discretion has occurred. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence. *State v. Peterson,* 1996 SD 140, ¶ 8, 557 N.W.2d 389, 391 (citation omitted). Evidentiary rulings made by the trial court

are presumed correct. *State v. Nguyen*, 1997 SD 47, ¶ 9, 563 N.W.2d 120, 122 (citation omitted).

[¶ 14.] In denying the motion, the trial court stated:

> I will deny the motion on failure to waive subrogation as a bad faith cause of action. The issue is not is it a cause of action, but is it a fact that the jury could consider in determining whether or not bad faith may have occurred? So I'll allow the testimony to be presented.
>
> . . .
>
> I will deny the motion on the grounds that it's again—it's not an issue of does it—is there a right to or not to [intervene], but rather it's just another choice of conduct on the part of the company and whether it was a right or wrong choice whether they should or should not have done so, that's just part of the mix of the facts surrounding the circumstances so I will deny that motion . . . [and] allow testimony under the intervention issue. . . . I would not necessarily prohibit the introduction of the statute,[2] itself. That may well be a piece of evidence that would be appropriate as evidence in fact[.]

[¶ 15.] We agree with Plains that the mere retention of the right to subrogation or mere intervention cannot constitute bad faith. However, neither of these statutory procedures were intended to impair the rights of the insured. Whether an insurance company acted in bad faith in its exercise of these rights is a question of fact for the jury or other trier of fact. *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 758 (S.D.1994).

[¶ 16.] There is evidence in the record from which the jury could determine that Plains' assertion of its subrogation right and intervention in the Hollingsworth trial were actions taken in bad faith. For example, internal memoranda generated by Plains' adjuster (GAB) indicates that GAB determined that Hollingsworth was "totally liable in this car accident" (Plaintiff's Ex. 4; undated), and that "[All Nations] has admitted liability for the accident and has paid for the damage to our insured's vehicle." (Plaintiff's Ex. 1; dated July 25, 1989). A letter from Plains' claim examiner states, "There is no question of liability in this case but there is a question of the amount of damages sought by the plaintiff." (Plaintiff's Ex. 14; dated January 11, 1993).

[¶ 17.] The order allowing Plains to intervene in the Hollingsworth case is dated January 11, 1993. The Hollingsworth trial took place in November of 1994. It is clear that Plains acknowledged Hollingsworth's liability prior to the Hollingsworth trial, yet disputed liability during that trial. In fact, Plains' prayer for relief requested that Harter's complaint be dismissed on the merits. May testified that he advised Plains in early 1992 that there was underinsured motorist exposure on Harter's policy, yet Plains contested liability at trial.

[¶ 18.] Additionally, Harter alleges that Plains considered Hollingsworth judgment proof and never seriously intended to pursue her for money beyond that available under her insurance policy, and claims this is borne out by Plains' post-trial release of Hollingsworth, given without asking for or receiving consideration. When asked about this release, May testified:

> A: It was much, much less likely we were ever going to collect $75,000 from Jacki Hollingsworth, who was employed as a cocktail waitress, than it would be if we had a $30,000 verdict where it was $5,000 or a $15,000 verdict, and a decision was made at that time to conclude it and to waive the subrogation case.
>
> . . .
>
> Q: She could have bankrupted a $5,000 judgment as easily as a $75,000 judgment, right?
>
> A: In my estimation, it's more unlikely that somebody would file bankruptcy for a $5,000 debt than they would have for a $75,000 debt.
>
> Q: Why didn't you just file your subrogation judgment for $5,000 then?
>
> A: Because the judgment had been made for $75,000—well, I guess it never occurred to us to do that.

2. Plains was allowed to introduce both SDCL 15–6–24(a) and SDCL 58–11–9.6 as exhibits.

[¶ 19.] "A covenant is implied in an insurance contract that neither party will do anything to injure the rights of the other in receiving the benefits of the agreement. This covenant includes a duty to settle claims without litigation in appropriate cases." *Helmbolt v. LeMars Mut. Ins. Co. Inc.*, 404 N.W.2d 55, 57 (S.D.1987) (citations omitted); *see also Crabb v. National Indem. Co.*, 87 S.D. 222, 227, 205 N.W.2d 633, 635 (1973) ("[G]ood faith is a broad and comprehensive term which has to be determined by the particular facts and circumstances in each case."). Plains has not shown an abuse of discretion in these rulings.

[¶ 20.] **2. WHETHER THE TRIAL COURT ERRED BY DENYING PLAINS' MOTION TO DISQUALIFY LEFHOLZ AND NAME HIM AS A WITNESS.**

[¶ 21.] Plains argues that the trial court abused its discretion by denying its motion to disqualify Lefholz, and name him as a witness. Plains claims Lefholz was a material witness to: 1) "Negotiations regarding the subrogation issue and Lefholz' failure to implement the procedure to obtain the tortfeasor's offer"; and 2) "the conversation at the underlying trial wherein [May] offered the policy limits and whether his actions amounted to conditioning."

[¶ 22.] First, Plains claims that Lefholz failed to timely respond to All Nations' August, 1992 advice that Harter demand payment from Plains according to a procedure

known as a "Schmidt v. Clothier"[3] release; this, Plains claims, stalled the $25,000 payment to Harter until January 19, 1994. Therefore, Plains claims it was unfair to allow Harter to argue that Plains delayed payment when Lefholz was responsible for at least seventeen months of the delay, but could not be cross-examined thereon.

[¶ 23.] Plains cites *Cascone v. Niles Home for Children*, 897 F.Supp. 1263, 1265 (W.D.Mo.1995), where the court states that a party may depose opposing trial counsel only after showing:

(1) no other means exist to obtain the information than to depose opposing counsel;

(2) the information sought is relevant and nonprivileged; and

(3) the information is crucial to the preparation of the case.

(Relying upon *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8thCir.1986)).[4] Harter cites authority which provides that the movant bears the burden of supporting the motion for disqualification with a showing that the evidence or testimony sought is unobtainable elsewhere. *E.g.*, *Munn v. Bristol Bay Hous. Auth.*, 777 P.2d 188, 197 (Alaska 1989) (collecting cases); *accord Smithson v. United States Fidelity & Guar. Co.*, 186 W.Va. 195, 411 S.E.2d 850, 856 (W.Va.1991):

[W]e conclude that when an attorney is sought to be disqualified from representing his client because an opposing party de-

---

3. *Schmidt v. Clothier*, 338 N.W.2d 256, 263 (Minn.1983), explains the method by which an underinsurer can protect its subrogation rights:

If, on the other hand, damages were substantially more than the liability limits and the tortfeasor had substantial assets, the underinsurer could substitute its payment to the insured in an amount equal to the tentative settlement. In this situation, the underinsurer's payment would protect its subrogation rights to the extent of the payment, and the insured would receive the amount of the settlement offer in cash. The underinsurer would then have to arbitrate the underinsured claim and could, thereafter, attempt to negotiate a better settlement or could proceed to trial in the insured's name. We note again that prompt assessment, arbitration, and payment of underinsurance claims will protect the underinsurer's subrogation rights, and the underinsurer will avoid having to choose later between either acquiesc-

ing in the settlement or substituting its check for the amount of the settlement offer.

4. Other cases cited by Plains are generally not on point and do not provide any criteria for determining whether the trial court abused its discretion in denying this motion. See, e.g., *155 North High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 650 N.E.2d 869 (1995) (abuse of discretion not to disqualify insured's lead trial counsel when he took stand and testified on fifth day of trial); *Warrilow v. Norrell*, 791 S.W.2d 515, 520 (Tex.App.1989) (disapproving attorney's dual role as trial counsel and material witness but finding no reversible error in trial court's refusal to disqualify the attorney); *United Pacific Ins. Co. v. Zardenetta*, 661 S.W.2d 244 (Tex.App.1983) (abuse of discretion not to disqualify attorney upon showing of "genuine need" for his testimony).

sires to call the attorney as a witness, the motion for disqualification should not be granted unless the following factors can be met: First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and third, the testimony is prejudicial or may be potentially prejudicial to the testifying attorney's client.

[¶ 24.] This evidence was clearly obtainable elsewhere; all pertinent letters and correspondence were admitted in this trial during direct examination of May. Plains discussed the letters during its opening statement and used them during cross-examination of Harter. Therefore, it was not necessary to disqualify Lefholz and question him regarding the proposed *Schmidt v. Clothier* release.

[¶ 25.] Plains argues that Lefholz was a material witness whether May conditioned the offer of the policy limits upon Harter's dismissal of the bad faith lawsuit. Plains claims that the offer was made to Lefholz alone, and Plains should have been allowed to question him. However, evidence of the circumstances surrounding the offer was obtainable elsewhere; Harter testified that she heard the offer and that it was conditioned on dismissal. May denied conditioning the offer but conceded on cross-examination, "I think [Harter] probably could have heard it, yeah." Additionally, Kerr testified by deposition that he was present when May offered the policy limits to Lefholz for a "full and final release, which of course is standard."

Q: When you say "standard," you mean "standard" what?

A: Well, whenever—In my experience, when we tender policy limits, we want to extinguish all claims, and—and we always attempt to enter into a global release, which means that all of the claims of the plaintiff, against the defendant and the insurance company, are extinguished; we're done with it.

. . .

Q: You also testified, a minute ago, that you understood, during jury deliberations, that [May] offered to have his insurance company pay Cynthia the policy limits, if she would forego any other efforts in her bad-faith action in Rapid City. Is that correct?

A: Well, I don't remember the specifics of it, Rod [i.e., Lefholz], but I think that what [May] was attempting to do was to tender his policy limits to get a global release.

[¶ 26.] Finally, internal memoranda generated by Plains indicates its goal was to obtain Harter's agreement to dismiss the bad faith action. Exhibit 15 is an inter-office memorandum dated March 8, 1993 and states in part: "We could consider agreeing to be bound by verdict, putting a high-low agreement into place in exchange for agreement to dismiss bad faith case." This memorandum apparently prompted the recipient, a claims examiner for Plains, to write a letter (Ex. 16) to May on March 18, 1993:

We could consider agreeing to be bound by a verdict, in essence putting a high low agreement in exchange for an agreement to dismiss the bad faith case against [Plains].

[¶ 27.] Plains has not shown an abuse of discretion; the correspondence pertaining to the proposed *Schmidt v. Clothier* release was received into evidence. May testified that the offer was not conditioned on dismissal of the bad faith action. Lefholz never represented to the jury his personal knowledge of the offer in a contrary manner, but countered May's testimony with Harter's testimony, the videotaped deposition of Kerr, and documents generated by Plains. Therefore, Plains has not shown that the trial court abused its discretion in denying the motion to disqualify.[5]

---

5. Plains also argues that Lefholz was a material witness concerning "Harter's actions in not providing information regarding dropping out of nursing school." Plains maintains that this is simply a case where it failed to predict the size of the jury verdict and that it was "ambushed" by Harter's revelation at trial that she quit nursing school, which drastically changed its view of her damages. It appears that this argument was not presented to the trial court in the motion to disqualify Lefholz. "Issues not addressed or ruled upon by the trial court will not be addressed by this Court for the first time on ap-

[¶ 28.] **3. WHETHER THE TRIAL COURT ERRED BY DENYING PLAINS' MOTION FOR MISTRIAL BASED ON ALLEGED INFLAMMATORY REMARKS BY LEFHOLZ IN VIOLATION OF A PRETRIAL RULING.**

[10] [¶ 29.] Plains made a motion in limine to prevent Harter's bad faith expert from testifying that this was a situation where an insurer with substantial wealth used its power to pressure a needy insured to accept a minimal offer. The trial court granted the motion and stated:

> But whether or not it's a wealthy company trying to take advantage of a poor person, that's not a question of practice. That's a judgment as to motivation.... I do have a problem in his using emotional overtones and judging why they choose to take an action.... I will grant [the motion] as to his opinion of the motivation of the conduct of the insurance company. He may speak to business practices and what is commonly done under a given [set] of circumstances, and would commonly be done in this case based upon his knowledge and experience. But [he may not say] the defendants intentionally chose not to settle because they thought they could use their wealth to overcome a weak plaintiff.

In its written order, the court prohibited the expert from testifying "regarding generalities as to wealthy insurance companies and poor insureds."

[¶ 30.] Plains claims that the trial court erred in not granting its motion for mistrial after Lefholz allegedly violated this order in his opening statement:

> This case is really the story of Cynthia, a mother of three, and how she was taken advantage of by a huge insurance corporation, an insurance company that cares about profits but not about people, an insurance company that cares about money but not about keeping promises.

Plains also claims Lefholz called it "fat and sassy." However, the transcript reveals that what Lefholz actually said in referring to Plains' attitude was, " ... in fact, sassy at this time." It was actually Morgans, during *his* opening statement, who used the phrase "fat and sassy":

> You're also going to hear and you heard the terms already and I guess this is what I was talking about conclusions earlier ... about a huge company with profits, is fat and sassy, they tried to defeat her claims, they forced her to trial, all these conclusions about what the company did in this case.... I ask you ... to hold them to these broad conclusions.

[11] [¶ 31.] In order for a violation of a motion in limine to serve as the basis for a new trial, the order must be specific in its prohibitions, and violations must be clear. *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419, 426 (S.D.1994). Lefholz' comments did not violate the *letter* of the order only because it was directed, not at him, but at Harter's expert witness; although his comments did violate the *spirit* of the order, and meet our disapproval, they do not constitute reversible error or warrant a new trial under these circumstances.

[¶ 32.] In addition, unlike *Ravellette*, other than the bare statement that it was prejudiced, Plains failed to demonstrate any prejudice as a result of these statements. *See id.* ("[A] new trial may follow only where the violation has prejudiced the party or denied him a fair trial. Prejudicial error is error which in all probability produced some effect upon the jury's verdict and is harmful to the substantial rights of the party assigning it.") (citations omitted).

[¶ 33.] Plains has not shown that the denial of the motion for mistrial was an abuse of discretion.

[¶ 34.] **4. WHETHER THE TRIAL COURT ERRED BY ALLOWING AN AWARD OF PUNITIVE DAMAGES.**

[12] [¶ 35.] SDCL 21-3-2 provides:

In any action for the breach of an obligation not arising from contract, where the

---

peal." *Wandler v. Lewis*, 1997 SD 98, ¶ 16, 567 N.W.2d 377, 381–82 *(citation omitted)*.
 Regardless, this evidence was also obtainable elsewhere; May and Kerr each testified that he

was taken by surprise at the Hollingsworth trial when Harter testified that she quit nursing school.

defendant has been guilty of oppression, fraud, or malice, actual or presumed, or in any case of wrongful injury to animals, being subjects of property, committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

Plains claims that the evidence at trial was insufficient to support a finding of malice and that the trial court erred in allowing the issue of punitive damages to be submitted to the jury.

 [¶ 36.] Malice may be either actual or presumed. *See Holmes v. Wegman Oil Co.*, 492 N.W.2d 107, 112–13 (S.D.1992):

> Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person. Presumed, legal malice is malice which the law infers from or imputes to certain acts.

(Citations & alterations omitted). We view the record in a light most favorable to the verdict to determine whether there is evidence to support a finding of presumed malice sufficient to support punitive damages. *Id.* "A claim for presumed malice can be shown by demonstrating a disregard for the rights of others." *Isaac*, 522 N.W.2d at 761 (citations omitted). The trial court's determination that there was a reasonable basis to submit the issue of punitive damages to the jury will not be disturbed absent a showing that the trial court's findings of fact are clearly erroneous. *Id.*

---

6. By reason of our disposition of Plains' issues, we need not address Harter's notice of review

[¶ 37.] There is evidence in the record to support submission of the issue of punitive damages to the jury. We need look no further than *Isaac:*

> There is evidence supporting the trial court's position that State Farm acted in reckless disregard of the rights of Isaac. Included in the actions taken by State Farm evidencing this reckless disregard is the fact that when State Farm did offer their policy limits of $100,000, the offer was conditioned on a release by Isaac of any bad faith claim that she may have with respect to State Farm's handling of the claim. Clear and convincing evidence existed to form a reasonable basis to present the issue of punitive damages to the jury. The trial court was not clearly erroneous.

*Id.* at 761–62. Plains has not shown that the trial court was clearly erroneous in submitting punitive damages to the jury.

[¶ 38.] The order denying Plains' motions for new trial and judgment notwithstanding the verdict is affirmed.[6]

[¶ 39.] MILLER, C.J., and AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.