# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 00-1206

_____

Daniel Athey,                                        *
                                                     *
    Plaintiff - Appellee,                        *
                                                     *  Appeal from the United States
v.                                                   *  District Court for the
                                                     *  District of South Dakota.
Farmers Insurance Exchange;                          *
Illinois Farmers Insurance Company,                  *
                                                     *
    Defendants - Appellants.                     *

_____

Submitted: October 19, 2000
    Filed: December 6, 2000

_____

Before HANSEN, MURPHY, and BYE, Circuit Judges.

_____

MURPHY, Circuit Judge.

Daniel Athey was injured in December 1993 when his automobile was hit by Robert Hajek, who had failed to stop at a stop sign and was underinsured. Athey sustained soft tissue damage to his back and made a claim on his underinsurance policy with Farmers Insurance Exchange. Farmers Insurance Exchange and Athey could not agree on a settlement, and Athey brought this diversity action against his insurer and Illinois Farmers Insurance Company (collectively Farmers), alleging that Farmers had

breached its contract in bad faith.  The district court[1] denied defense motions to bifurcate the breach of contract and bad faith claims and for summary judgment, and the case went to trial.  The jury returned a verdict in favor of Athey and awarded him $60,000 for breach of contract, as well as $125,000 compensatory damages on the bad faith claim and $450,000 in punitive damages.  Farmers moved for a new trial or judgment as a matter of law.  The district court [2] denied the motion, and Farmers appeals.  We affirm.

I.

The driver who hit Athey was only 14 years old and was covered by a $25,000 liability insurance policy from Dairyland Insurance Company (Dairyland).  Athey's own insurance policy with Farmers provided $20,000 no fault coverage and $100,000 underinsured motorist coverage.  Between March 1994 and September 1996, Athey collected $12,536.30 from Farmers in no fault benefits to pay his medical bills.

Shortly after his injury, Athey hired Sioux Falls attorney James Hertz to help him recover.  Hertz obtained medical information from his client and his doctors and hired an expert to calculate the vocational loss that resulted from his injuries.  After examining the records and reports, Hertz concluded that Athey's losses exceeded the policy limits of Dairyland and Farmers.  Hertz sent the insurance companies a letter requesting $25,000 from Dairyland and $75,000 from Farmers' underinsured motorist policy.  The letter detailed Athey's losses and included copies of medical records and related reports.

---

[1]The Honorable Lawrence L. Piersol, Chief United States District Judge for the District of South Dakota.

[2]The Honorable John B. Jones, United States District Judge for the District of South Dakota, who also presided at trial.

Charles Schechter, a resident representative in Farmers' Shoreview, Minnesota claims office, responded that the underinsured motorist claims were premature because Dairyland's policy limits had not been exhausted.

Dairyland offered to pay Athey $25,000, which represented the limit of the other driver's liability coverage, but it conditioned payment on the release of further claims by him and Farmers. Hertz wrote Farmers and requested that it either release the underinsured driver and Dairyland so that Athey could accept Dairyland's offer, or it could pay him the $25,000. George Liegakos, the Shoreview Claims Manager, informed Hertz that Farmers would not make the $25,000 payment, but that it would release its claims against the other driver. It refused to waive its right to reimbursement with respect to the no fault benefits it had already paid, however.

Schechter later wrote Hertz that Farmers had evaluated Athey's claim to be in the $25,000 range and would waive its right to seek reimbursement if Athey would release his underinsured motorist claim against Farmers. A release of the underinsured motorist claim against Farmers would have prevented Athey from recovering any losses in excess of $25,000, and he would have had to return the benefits Farmers had already paid once he obtained the $25,000 from Dairyland. Schechter informed Hertz that if the offer was unacceptable to Athey, he should "follow the dictates of South Dakota law in this regard."

Two days after Hertz received Farmers' evaluation of Athey's claim, Hertz also received a release form and a $25,000 check copayable to Farmers and Athey from Dairyland. Hertz sent the Dairyland check and release form on to Farmers and demanded that it waive its right to seek reimbursement and endorse the check. He threatened to bring a bad faith action if Farmers did not comply. Since Liegakos was unfamiliar with South Dakota law, he forwarded the check to Dave Thue, a claims representative in Farmers' South Dakota claims office. After he evaluated the claim, Thue informed Hertz that Farmers had changed its position. It would no longer allow

Athey to release his claims against the other driver, but it would substitute its draft for $25,000 in place of the Dairyland check. Hertz wrote Thue that the offer was contrary to his agreement with the Farmers office in Minnesota and turned it down. Thue endorsed the Dairyland check and sent it to Hertz but said that Farmers wanted to conduct an independent medical examination of Athey and would not release its subrogation rights until it had reviewed the results. Hertz called Thue to complain that Athey could not cash the check without a complete release of the underinsured driver and Dairyland, but Thue refused to waive Farmers' subrogation rights.

Negotiations apparently had reached a standstill. Hertz filed this action on August 22, 1996, and on the same day Farmers was served with a summons and complaint. Count I alleged that Farmers had breached its contract by failing to pay Athey $75,000 (the policy limits less the $25,000 sought from Dairyland). Count II requested a declaratory judgment that Farmers had waived its subrogation rights against Hajek and Dairyland. Count III alleged that Farmers' failure to pay Athey underinsured motorist benefits was vexatious and without reasonable cause and entitled him to attorney fees under S.D.C.L. § 58-12-3. Count IV alleged that Farmers had acted in bad faith by failing to investigate Athey's claims and by delaying his settlement.

After litigation began, Farmers allowed Athey to settle with Dairyland but eventually terminated his no fault benefits. Farmers had scheduled an independent medical examination of Athey, but it suspended his no fault benefits after he missed the appointment and soon waived its right to seek reimbursement. Athey then completed his settlement with Dairyland and the underinsured driver, and he submitted to an independent medical examination by Dr. Robert Fielden. After Dr. Fielden reported that Athey should stop all medical and chiropractic treatment, Farmers terminated his no fault benefits.

Farmers moved for partial summary judgment on the grounds that Athey's bad faith claim was premature and that his request for declaratory judgment was moot. Farmers also moved to bifurcate his claims so that the bad faith claim would be tried after that for breach of contract. The district court allowed Athey to file an amended complaint without the request for declaratory relief, but it denied the motions to dismiss the bad faith claim and to bifurcate. Shortly after its motion for summary judgment was denied, Farmers reevaluated the underinsured motorist claim and sent Athey an additional $15,000. On February 4, 1997, United States Magistrate Judge Mark Marshall conducted a settlement conference between Athey and Farmers. Farmers refused to offer any amount to settle the underinsured motorist claim unless Athey agreed to abandon his bad faith claim. Athey refused, and the conference ended without a resolution of any of the claims. Later, after a substantial amount of discovery had been completed, Farmers again moved unsuccessfully for summary judgment.

Shortly before trial, Hertz concluded that he would have to testify in order to prove the bad faith claim so he moved to withdraw as trial counsel. The motion was granted, and Hertz wrote Athey a letter explaining the contingency fee arrangement between himself and new trial counsel. The letter stated, "even though I cannot represent you at trial, I will continue to be involved and provide assistance to you and your new counsel." During the trial Hertz did not act as trial counsel or sit at counsel table. He testified at length about his negotiations with Farmers, including its refusal to settle the underinsured motorist claims without the abandonment of Athey's bad faith claim. The jury also heard evidence that an attorney representing Farmers had recommended that the independent medical examination be conducted by Dr. Fielden because that doctor had a reputation for regularly recommending the cessation of medical treatment for patients who had suffered back injuries.

After a two day trial the jury returned its special verdict that Farmers had breached its contract with Athey and had acted in bad faith. Athey was awarded

$60,000 on the breach of contract claim and $125,000 in compensatory and $450,000 in punitive damages on the bad faith claim. Farmers moved for a new trial or judgment as a matter of law which the district court denied.

Farmers appeals, arguing that it was prejudiced by having to try the breach of contract and bad faith claims together because evidence admitted on the latter inflamed the jury. Farmers also asserts that the refusal to bifurcate put it at a disadvantage because its claim files were made discoverable and that there was insufficient evidence to support the jury findings of bad faith, compensatory damages for emotional distress, and punitive damages. Farmers also argues that the admission of evidence of the settlement conference violated Fed. R. Evid. 408 and that Hertz's testimony disregarded a South Dakota law that prohibits an attorney from acting as both advocate and witness. Athey responds that Farmers was not prejudiced by having to try the claims at the same time; that there was sufficient evidence to support the jury's determination that Farmers acted in bad faith and the award of punitive and compensatory damages; and that the district court did not err in its evidentiary rulings.

II.

A.

The denial of a motion to bifurcate under Fed. R. Civ. P. 42(b) is reviewed for abuse of discretion. See Equal Employment Opportunity Comm'n v. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998). Farmers has not shown that Athey's access to its claim files prejudiced its case. The district court did not abuse its discretion when it did not bifurcate the claims.

B.

Although evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408. Under South Dakota law, an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith. See Harter v. Plains Ins. Co., Inc., 579 N.W.2d 625, 634 (S.D. 1998); Isaac v. State Farm Mut. Auto. Ins. Co., 522 N.W.2d 752, 761(S.D. 1994); see also Crabb v. Nat'l Indem. Co., 205 N.W.2d 633, 637 (S.D. 1973) (insurer's refusal to enter into meaningful settlement negotiations is bad faith). Evidence of Farmers' conduct during the settlement conference was not inadmissible under Rule 408 because it was "offered for another purpose," and the district court did not abuse its discretion by admitting it.

Farmers also claims that Hertz's testimony was inadmissible because he had not completely withdrawn from the case, and South Dakota law prohibits an attorney from participating in a trial in which he also testifies. See S.D. CODIFIED LAWS § 19-1-3 (Michie 1995). Farmers did not object during trial on this basis, but included this argument in its motion for a new trial when it offered evidence that Hertz spent 198.5 hours assisting in preparation of the case after his withdrawal. A new trial should not be granted on the basis of the erroneous admission of evidence unless a timely objection is made at trial or the evidentiary ruling was plain error. See FED. R. EVID. 103(a); Qualley v. Clo-Tex Int'l, Inc., 212 F.3d 1123, 1127 (8th Cir. 2000); HBE Corp., 135 F.3d at 551. The admission of Hertz's testimony was not plain error, and the district court did not abuse its discretion when it denied the motion for a new trial.

-7-

C.

Denial of a motion for judgment as a matter of law is reviewed de novo. See Peerless Corp. v. United States, 185 F.3d 922, 926 (8th Cir. 1999). A jury verdict should not be overturned unless there is a complete absence of facts to allow the jury to reach its conclusion. See Henderson v. Simmons Foods, Inc., 217 F.3d 612, 615 (8th Cir. 2000). In considering such a motion, a court should "assume as proven all facts that the nonmoving party's evidence tended to show, give [him] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [his] favor." Id. (citations omitted).

There was sufficient evidence to support the jury's verdicts of bad faith and punitive damages. Under South Dakota law, a plaintiff may show that an insurer acted in bad faith by showing that the it denied policy benefits without a reasonable basis and with a reckless indifference to proofs submitted by the insured. See Walz v. Fireman's Fund Ins. Co., 556 N.W.2d 68, 70 (S.D. 1996); Champion v. United States Fidelity and Guar. Co., 399 N.W.2d 320, 324 (S.D. 1987). There is ample evidence in the record that Farmers ignored proofs of losses incurred by Athey and denied his claim without a reasonable basis. Furthermore, conditioning the settlement of an underinsurance policy on the release of a bad faith claim has been found sufficient to support an award of punitive damages against an insurer in South Dakota. See Harter, 579 N.W.2d at 634; Isaac, 522 N.W.2d at 761-62; see also Helmbold v. LeMars Mut. Ins. Co., 404 N.W.2d 55, 57 (S.D. 1987) ("A covenant is implied in an insurance contract that neither party will do anything to injure the rights of the other in receiving the benefits of the agreement. This covenant includes a duty to settle claims without litigation in appropriate cases." (citation omitted)).

The award of compensatory damages for emotional distress was also supported by sufficient evidence. To recover damages for emotional distress in South Dakota, a

plaintiff must establish that he sustained a pecuniary loss because of the bad faith of an insurer. See Kunkel v. United Sec. Ins. Co. of N.J., 168 N.W.2d 723, 734 (S.D. 1969). Athey proved that Farmers' refusal to release Hajek and Dairyland prevented him from finalizing the $25,000 settlement with Dairyland, and Athey was forced to pay for his own medical treatment after his independent medical review and Farmers' termination of no fault benefits. The jury also could have inferred from the testimony of Patricia Athey that her husband had to forego certain medical treatment because of lack of funds. The jury could reasonably find that the pecuniary loss Athey endured caused him mental anguish.

III.

Farmers has not shown that it is entitled to judgment as a matter of law or to a new trial. Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-