2009 Ark. App. 605

Cecile S. TAYLOR, Appellant,

v.

Claudia C. TAYLOR, William C. Taylor, and C. Elizabeth Taylor, Appellees.

No. CA 08–1078.

Court of Appeals of Arkansas.

Sept. 23, 2009.

‘

Mitchell, Williams, Selig, Gates & Woodyard, PLLC, Little Rock, by: Michelle H. Cauley and Delena C. Hurst, Little Rock, for Appellant.

Rose Law Firm, a Professional Association, by: Richard T. Donovan and Amanda K. Wofford, Little Rock, for Appellees.

ROBERT GLADWIN, Judge.

Cecile Taylor, the widow of George Taylor, appeals from a judgment denying her petition to quiet title to timber land and granting the quiet-title claim of George's ex-wife, appellee Claudia Taylor, and his children, appellees William Taylor and Elizabeth Taylor, to the same property. Cecile claims the property, which George inherited from his grandfather, through two deeds that George signed in 1996 that conveyed the entire property to him and Cecile as tenants by the entirety.

Appellees assert their claims to one-half of this property under the terms of George's and Claudia's property-settlement agreement in their 1984 divorce. George never gave appellees a deed to the one-half interest called for in the property-settlement agreement. Cecile argued below that the statute of limitations barred appellees' claims to the property. The trial court disagreed, finding that George and Cecile were estopped to assert any limitations period. We affirm the trial court's decision.

Claudia and George married in 1973 and had two children. During their marriage, George inherited property from his grandfather, Judge George LeCroy, who had established a testamentary trust for his grandchildren. The trust included real property, including an office building in El Dorado,[1] and mineral rights. George and his sisters divided the trust property in December 1983, which resulted in litigation. While that litigation was pending, George and Claudia divorced. According to Claudia, George was unemployed and abusing cocaine at that time. George and Claudia entered into a property-settlement agreement providing that one-half of his inherited property would be conveyed to Claudia for her life and then to their children in fee upon her death. After the divorce, George and Claudia equally divided the mineral interests, and the oil and gas companies amended their division orders and payments accordingly. Since then, Claudia has received royalty payments from producing mineral interests and has continued to pay taxes on those properties.

This lawsuit concerns the remaining property of Judge LeCroy's estate, timber

---

1. Even though George never deeded an interest in the building to Claudia, he recognized her interest. At his request, Claudia gave him a quitclaim deed of her interest in the building in 1996. George and Cecile bought the other interests in the building in 1996 with a loan from her father.

land in Union and Columbia Counties. In George and Claudia's property-settlement agreement, they agreed to divide the timber land in kind after the litigation concerning the estate was resolved:

> It is agreed by the parties hereto that the timber lands shall be divided in kind. As a result of the pending litigation in the Chancery Court of Union County, Arkansas, Case No. 84–30, the parties hereto are unable to determine which tracts of timber lands are subject to division in kind. Upon the resolution of such litigation, the parties hereto shall endeavor to effectuate a division of the timber lands in kind. In the event the parties are unable to agree on such division, based on approximately equal values, the parties agree that this Court retain jurisdiction of this matter for the purpose of dividing said timber lands in kind.

The litigation over the trust property was dismissed with prejudice on March 6, 1985. Although George and Claudia had disputes about child support and other matters over the ensuing years, they did not take further action to divide the timber land. George shared some of the timber proceeds with Claudia in the 1980s. Claudia paid some of the property taxes on the timber land in 1990 (and possibly before).

After George married Cecile in 1989, they experienced serious financial problems. Over the next several years, Cecile's father, Marshall Shackleford,[2] an attorney, loaned the couple a significant amount of money. On Marshall's advice, and using deeds Marshall had prepared, George conveyed title to the timber land in both counties to himself and Cecile as tenants by the entirety on January 31, 1996. They filed the deeds on February 6, 1996, but did not tell Claudia or the children

about these deeds. In 2004, Claudia filed a "Notice of Interest in Property Pursuant to Court Decree," asserting her life estate in one-half of the timber land in Union County. George died in 2006, leaving Cecile with debts exceeding half a million dollars. She owed Marshall over $250,000. In 2007, Cecile filed this action to quiet title to the timber land, asserting her rights pursuant to the 1996 deeds. She alleged that all possible statutes of limitation had run on appellees' rights to enforce their interests created by the property settlement.

Appellees filed a counterclaim asserting their interests in the property pursuant to the property-settlement agreement and requesting an order quieting title in them. They argued that the statute of limitations did not apply, that it had been tolled, or that Cecile was estopped to assert it. They also contended that George's obligations under the property-settlement agreement were in lieu of child support. Appellees asked the court to declare the 1996 deeds to George and Cecile null and to impose a constructive trust on the property. They further argued that the statute of limitations was tolled by fraudulent concealment and that Cecile's claim was barred by res judicata, collateral estoppel, and unclean hands.

Cecile, Marshall, Claudia, William, and Elizabeth testified at trial. In its order, the trial court held that there was no fraudulent conduct by George and Cecile; that the property division was not in lieu of child support; and that res judicata did not apply. The court found that, by failing to divide the property, and by agreeing on the court's continuing jurisdiction in the property settlement, the parties did not breach the agreement, and performance

---

**2.** Marshall represented George in the divorce but withdrew before the property-settlement agreement was filed. He represented him again after George married Cecile.

was deferred with no time limit. It further found that George and Cecile were estopped from raising any statute of limitations against appellees. The court ruled that Claudia was entitled to a one-half life estate in the timber land and that, upon her death, the remainder would vest in her children. Cecile filed a timely notice of appeal.

Cecile makes three arguments to support her assertion that the trial court erred in refusing to quiet title in her favor: (1) the statute of limitations ran on appellees' rights to enforce the property settlement; (2) estoppel, which would toll the statute of limitations, did not apply in this case; and (3) the trial court did not have continuing jurisdiction to enforce the agreement, although she concedes that the trial court had continuing jurisdiction if the statute of limitations did not run. A court may retain jurisdiction over matters related to a property-settlement agreement with a general reservation of jurisdiction, even if the issue in dispute is not specifically mentioned in the divorce decree. *See Carver v. Carver,* 93 Ark. App. 129, 217 S.W.3d 185 (2005). A court may exercise its equitable jurisdiction and apply the doctrine of equitable estoppel to preclude a party from asserting the statute of limitations as a bar, even when there is no express statutory basis for tolling. *Kitchens v. Evans,* 45 Ark. App. 19, 870 S.W.2d 767 (1994).

Cecile contends that the agreement, which was incorporated into the divorce decree without court judgment, was an independent contract subject to the five-year statute of limitations set forth in Arkansas Code Annotated section 16–56–111(b) (Repl.2005), *see Meadors v. Meadors,* 58 Ark. App. 96, 946 S.W.2d 724 (1997), which began to run when the probate dispute was resolved on March 6, 1985. Thus, she states, appellees' cause of action accrued in 1985, and this action was barred after March 6, 1990. She adds that, even if the statute of limitations was tolled until 1990, it began to run again and was barred by 1995, five years after Claudia last paid any taxes on the timber land, and more than five years after George last shared timber proceeds with Claudia. Cecile claims that appellees took no action to enforce their rights to one-half of the timberland until 2004, when Claudia filed a notice of interest in the real property in Union County. As for the timber land in Columbia County, Cecile argues, appellees took no action to enforce their rights until 2007, when they filed their counterclaim in this action.

The trial court did not decide which statute of limitations (the five-year statute applicable to written contracts, or the ten-year statute for judgments, Arkansas Code Annotated section 16–56–114 (Repl.2005)), would apply. Instead, it found that, by failing to act to divide the timber land, and by agreeing on the court's continuing jurisdiction, performance was deferred with no limit of time, and the parties did not breach the contract. If there was no breach of contract, the statute of limitations did not begin to run. The trial court's finding that the parties did not breach the contract was a question of fact. *See Worch v. Kelly,* 276 Ark. 262, 633 S.W.2d 697 (1982).

Although we review traditional equity cases de novo, the test on review is whether we can say that the trial court's findings are clearly erroneous. *Statler v. Painter,* 84 Ark. App. 114, 133 S.W.3d 425 (2003). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake was made. *A.R. v. Brown,* 103 Ark. App. 1, 285 S.W.3d 716 (2008). We defer to the trial court in mak-

ing credibility determinations. *Id.* Despite the well-presented and vigorous argument of appellant's counsel in her brief and at oral argument, we are constrained to follow this standard of review, and cannot say that the trial court's finding of no breach was clearly erroneous. As discussed below, George consistently acted toward Claudia as though he intended to abide by the terms of the settlement agreement,[3] which simply required the parties "to endeavor to effectuate a division of the timber lands in kind" and placed no time limit for them to do so. A court may look to the conduct of the parties to determine their intent and to give substance to indefinite terms of a contract. *Welch v. Cooper,* 11 Ark. App. 263, 670 S.W.2d 454 (1984).

We also find no error in the trial court's finding that, even if any statute of limitations might have applied, it would have been tolled by the actions of George and Cecile, who were estopped to argue otherwise. The court noted that George and Claudia both cut timber from the land during the 1980s, with the last cutting in 1989, and that George wrote a letter to Claudia on September 25, 1996, after he signed the deeds, requesting Claudia's permission and agreement about certain matters involving the cutting of the timber. The court also pointed out that Cecile asked Claudia to contribute to the payment of taxes on the land as late as 1999. The trial court found that Claudia relied on the agreement and her course of dealing with George in believing that she and the children had an interest in the timber land.

Estoppel precludes a party from asserting the statute of limitations when his actions have fraudulently or inequitably invited a party to delay commencing legal action until the relevant statute of limitations has expired, or when he has done anything that would lull the other party into inaction so that his vigilance is relaxed. *Kitchens, supra.* The elements of estoppel are as follows: (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance. *Felton v. Rebsamen Med. Ctr., Inc.,* 373 Ark. 472, 284 S.W.3d 486 (2008). Whether estoppel is applicable is an issue of fact to be decided by the trier of fact. *Hoffius v. Maestri,* 31 Ark. App. 13, 786 S.W.2d 846 (1990).

Presented with these facts, the trial court did not clearly err in applying estoppel. We agree with the trial court that George's and Cecile's actions lulled Claudia and the children into relaxing their vigilance about their rights in the property. First, George and Cecile knew the facts. George certainly knew the terms of the property settlement, and Cecile, at the very least, knew of its existence. The evidence, in fact, showed that she was aware that appellees were entitled by its terms to one-half of George's inheritance. George and Cecile obviously knew about the 1996 deeds to themselves, and their failure to mention the existence of these deeds to appellees.

Whether George and Cecile intended that their conduct be acted upon was a question of fact, which the trial court was justified in determining after seeing the witnesses testify and reviewing the exhibits. For approximately twenty years after the 1984 divorce, George and Cecile made statements to Claudia and the children that can only be described as acknowledg-

---

**3.** *See Oaklawn Bank v. Alford,* 40 Ark. App. 200, 845 S.W.2d 22 (1993).

ments of their one-half interest in George's inheritance. With Marshall as his attorney in 1991, George acknowledged Claudia's interest in the timber land in an answer to an interrogatory. In September 1996, George recognized Claudia's interest in the timber land in a letter in which he discussed their cutting timber on thirty-five acres at Walkerville. George explained his failure to pay child support by stating to appellees that their interest awarded in the property settlement was designed to take care of that obligation. Claudia stated: "[A]fter the 1991 event when we went back and discussed him paying child support, he said over and over after that, I feel like that was my child support." William testified that on a couple of occasions, he asked his father why he would not pay child support, and George replied: "I've given you half of everything I own and that's your child support.... [G____ d____] it, I've told you before I've given you already, you and your mother, half of everything I own. Don't ask me that again. That's your child support." Elizabeth also testified that she received the same answer to that question from George. Additionally, Cecile asked Claudia in writing to pay one-half of the property taxes on the land in dispute in 1999. Cecile's October 8, 1999 check to the tax collector contained the following phrase in the lower left corner: "Geo & Claudia taxes."

There is no question that Claudia and the children were ignorant of the facts.

Claudia, who was represented until 1994 by Bob Compton, testified that they never discussed the issuance of deeds to this property, and that, after the divorce, she put the property settlement in a drawer and did not read it again. She said that she and George never discussed deeds to the timber land after the divorce, and that she thought there was nothing left to be done to give effect to the terms of the settlement agreement or to protect her interest. Claudia stated that she did not know that she needed a deed to the timber land, and if she had known, she would have asked for one. Also, George and Cecile did not tell appellees about the 1996 deeds. Claudia testified that she did not recall having seen the deeds before Cecile filed this lawsuit.

The evidence clearly showed that appellees relied on George's and Cecile's conduct and were injured by that reliance. As discussed above, Claudia did not know that she had to do anything further to protect appellees' one-half interest in the timber land and did not insist that George give them a deed.

Affirmed.

GLOVER and HENRY, JJ., agree.