# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2954

_____

B & B Hardware, Inc.

*Plaintiff - Appellant*

v.

Fastenal Company

*Defendant - Appellee*

_____

No. 12-1066

_____

B & B Hardware, Inc.

*Plaintiff - Appellant*

v.

Fastenal Company

*Defendant - Appellee*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: June 14, 2012
Filed: August 21, 2012

_____

Before LOKEN, GRUENDER, and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

B & B Hardware, Inc. ("B & B"), a supplier of self-sealing fasteners, sued Fastenal Company for breach of an exclusive supply agreement, tortious interference with business expectancy and violation of the Arkansas Deceptive Trade Practices Act ("ADTPA") based on Fastenal's purchases of self-sealing fasteners from competing suppliers. The district court granted summary judgment[1] to Fastenal on all claims and awarded attorney's fees[2] to Fastenal. B & B now appeals, and we affirm.

## I.    Background

B & B manufactures a patented self-sealing fastener. Fastenal is one of the largest industrial and construction suppliers in the world, with annual revenues of about $2.3 billion. In 1999, B & B and Fastenal executed an exclusive supply agreement for self-sealing fasteners. For purposes of its summary judgment motion, Fastenal does not dispute that it was precluded under the agreement from obtaining self-sealing fasteners from manufacturers other than B & B. The parties' course of conduct under the agreement was that Fastenal would request a quote from B & B for

_____

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

[2]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

a quantity of self-sealing fasteners, B & B would provide the quote, and Fastenal would decide whether to make a purchase under the terms of the quote. By 2010, Fastenal had requested a total of about 560 quotes from B & B and executed purchases on about 250 of those quotes.

From the outset of the parties' relationship, however, Fastenal obtained the vast majority of its self-sealing fasteners from sources other than B & B. According to B & B's own damages expert, Fastenal spent only about $1,000 on self-sealing fasteners from B & B out of the $10 million total Fastenal spent on self-sealing fasteners it distributed in each of 2001 and 2002. Internal B & B documents from September 1999 and September 2002 show that B & B was aware that Fastenal likely was obtaining self-sealing fasteners from other sources. Nevertheless, B & B took no action to enforce the exclusive supply agreement until 2010.

In January 2010, B & B sent a demand letter to Fastenal alleging breaches of the agreement and suggesting that the parties negotiate a settlement. B & B enclosed a draft complaint that described multiple instances in which Fastenal had failed to purchase needed self-sealing fasteners from B & B, six of which occurred from 1999 to 2004. Fastenal chose not to negotiate, and B & B filed this suit in May 2010. The as-filed complaint omitted all allegations of breaching conduct prior to June 2005.

Fastenal moved for summary judgment on the basis of the statute of limitations ("SOL"). Arkansas applies a general contract SOL of five years, *see* Ark. Code Ann. § 16-56-111, but only four years for contracts for the sale of goods governed by the Uniform Commercial Code ("UCC")), *see id.* § 4-2-725(1). While B & B's complaint facially failed to satisfy the four-year SOL, B & B contended that the five-year general contract SOL applies because the parties' agreement was a brokerage agreement, rather than a contract for the sale of goods. The district court held that even if the five-year SOL applied, there was no genuine dispute that the earliest breach occurred in 1999, rendering the breach-of-contract claim untimely regardless.

-3-

In addition, the district court ruled that B & B's tortious interference and ADTPA claims were not cognizable because they derived solely from breaches of the agreement. Accordingly, the district court granted summary judgment to Fastenal on all claims and later awarded Fastenal attorney fees and costs totaling about $400,000.

On appeal, B & B argues that (1) the draft complaint should not have been considered by the district court, (2) the agreement was not a contract for the sale of goods, making the four-year SOL under the UCC inapplicable, (3) the SOL began to run only when B & B *discovered* a material breach, not at the time of the earliest breach, (4) the SOL should have been equitably tolled, (5) its tortious interference and ADTPA claims should survive because they are not derived from the parties' agreement, and (6) the award of attorney's fees should be vacated if the grant of summary judgment is vacated.

## II.    Discussion

We review a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party and affirming only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co.*, 606 F.3d 544, 548 (8th Cir. 2010). "Although we view the facts and inferences in the light most favorable to [the nonmoving party], it has the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Id.* The parties agree that we should apply Arkansas law in this diversity case. *See Asia Pac. Indus. Corp. v. Rainforest Cafe, Inc.*, 380 F.3d 383, 385 (8th Cir. 2004).

First, B & B argues that the district court improperly relied on the draft complaint that accompanied B & B's January 2010 demand letter as evidence that the agreement was breached more than five years before suit was filed. "We review the admission of evidence for consideration at the summary judgment stage for an abuse

of discretion." *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 591 (8th Cir. 2011). "Although evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted 'when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.'" *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (quoting Fed. R. Evid. 408 (2000)). This principle has not been modified by subsequent amendments to Rule 408 in 2006 and 2011. *See* Fed. R. Evid. 408 advisory committee note (2006) (stating that "[t]he intent is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim" and expressly citing *Athey* as an example); *id.* advisory committee note (2011) ("These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.").

Here, the draft complaint was admitted for the purpose of establishing when the statute of limitations began to run, which is separate from establishing the elements of the underlying breach of contract claim. *See Gomez v. ITT Educ. Servs., Inc.*, 71 S.W.3d 542, 545 (Ark. 2002) ("[T]he general rule is that a true statute of limitations extinguishes only the right to enforce the remedy and not the substantive right itself."). As a result, the district court did not abuse its discretion in considering the draft complaint. *See Kraft v. St. John Lutheran Church of Seward, Neb.*, 414 F.3d 943, 947 (8th Cir. 2005) (finding no abuse of discretion in the district court's consideration of evidence from settlement negotiations for the purpose of disproving a plaintiff's assertion about when the statute of limitations began to run).

Second, B & B contends that the parties' contract is not governed by the UCC because it was predominantly a brokerage services agreement in which Fastenal agreed to promote B & B's goods to third parties. To the contrary, the agreement repeatedly refers to Fastenal's duty to "purchase" goods from B & B and "resell"

-5-

them to third party customers. It also provides that B & B will deliver goods directly to Fastenal, rather than to the third party customers; that Fastenal, rather than the third party customers, must pay B & B within 30 days of shipment of the goods to Fastenal; and that B & B is insulated from any money collection disputes between Fastenal and the third party customers. While the agreement mentions Fastenal's duty to promote B & B's goods to third parties, none of the consideration due Fastenal is based on such promotional efforts; instead, Fastenal simply must pay B & B for each batch of goods it orders. Even if we interpret Fastenal's limited promotional duty as creating a "mixed" contract for the sale of goods and services, the agreement is fundamentally one for the sale of goods, and the UCC governs. *See Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 932 (8th Cir. 1999) ("Although the parties' franchise agreement is a mixed contract for the sale of goods and services, the transaction at issue is fundamentally an exchange of goods. The Uniform Commercial Code . . . governs such transactions [under Arkansas law]."). Therefore, the four-year statute of limitations applies to B & B's breach of contract claim. *See* Ark. Code Ann. § 4-2-725(1).

Third, B & B contends that the SOL did not begin to run until B & B discovered a material breach. To the contrary, the UCC plainly states that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ark. Code Ann. § 4-2-725(2). The Supreme Court of Arkansas has refused attempts to graft exceptions onto this rule for delayed discovery of the breach. *See Gen. Motors Corp. v. Tate*, 516 S.W.2d 602, 606 (Ark. 1974). Therefore, even if the analysis is limited to the facts alleged on the face of B & B's as-filed complaint, the SOL began to run no later than June 2005, when B & B alleges that Fastenal failed to perform "as required by The Agreement." Because the complaint was filed on May 3, 2010, well more than four years after the alleged breach in June 2005, the SOL bars the breach-of-contract claim.

Fourth, B & B argues that the SOL should be tolled because Fastenal lulled B & B into believing Fastenal was still performing under the contract by continuing to request quotes and place orders. "Estoppel precludes a party from asserting the statute of limitations when his actions have fraudulently or inequitably invited a party to delay commencing legal action until the relevant statute of limitations has expired, or when he has done anything that would lull the other party into inaction so that his vigilance is relaxed." *Taylor v. Taylor*, 343 S.W.3d 335, 339 (Ark. Ct. App. 2009). The elements of estoppel are as follows:

> (1) the party to be estopped knew the facts; (2) the party to be estopped intended that the conduct be acted on; (3) the party asserting the estoppel was ignorant of the facts; and (4) the party asserting the estoppel relied on the other's conduct and was injured by that reliance.

*Id.* "Whether estoppel is applicable is an issue of fact to be decided by the trier of fact." *Id.* We note that the UCC does not displace the common law of equitable tolling of the statute of limitations. *See* Ark. Code Ann. § 4-2-725(4).

In this case, there is no genuine issue of material fact as to whether B & B was ignorant of the facts regarding Fastenal's continuous breaching conduct. Internal B & B documents show that B & B was aware in September 1999 and September 2002 that Fastenal likely was selling self-sealing fasteners it had obtained from other sources. B & B's draft complaint enclosed with its initial demand letter included details of Fastenal's conduct all but confirming that Fastenal had purchased non-B & B self-sealing fasteners on multiple occasions dating from 1999 to 2004. Moreover, it is undisputed that Fastenal purchased about $10 million worth of self-sealing fasteners for distribution in each of 2001 and 2002, but only about $1,000 worth of those purchases were made from B & B. Even if one accepts B & B's self-serving declaration that it somehow remained unaware of Fastenal's continuing failure to abide by the agreement despite the obvious signs that Fastenal was purchasing non-B & B self-sealing fasteners, "a party cannot avoid the bar of the

statute of limitations if he had the means to discover the facts giving rise to his action." *Stracener v. Williams*, 137 S.W.3d 428, 432 (Ark. Ct. App. 2003) (quoting 54 C.J.S. *Limitations of Actions* § 87). Because no reasonable jury could find that B & B was ignorant of the facts surrounding Fastenal's breaching conduct, B & B cannot benefit from an equitable exception to the statute of limitations.

Fifth, B & B asserts that its tortious interference and ADTPA claims are not derived from the parties' contractual relationship because B & B alleges specific instances after 2007 where Fastenal steered customers seeking B & B self-sealing fasteners to another company's self-sealing fastener instead. However, B & B concedes in its opening brief that the specific instances "also happened to be a breach of the duties and obligations outlined by the Agreement." Indeed, absent the agreement, Fastenal would have been within its rights to steer third party customers to any self-sealing fastener product it chose, no matter which product the customers initially had been seeking. Thus, "[a]ny adverse effect on [B & B's] relations with [a third party] was an incidental consequence of the breach of contract, not an independent basis for liability in tort." *Income Props./Equity Trust v. Wal-Mart Stores, Inc.*, 33 F.3d 987, 990 (8th Cir. 1994) (applying Arkansas law). A similar analysis applies to B & B's claims under the Arkansas Deceptive Trade Practices Act. *See CEI Eng'g Assocs., Inc. v. Elder Constr. Co.*, 306 S.W.3d 447, 453-54 (Ark. Ct. App. 2009) (holding that claims that "represent nothing more than . . . dissatisfaction with how [a party] set about to fulfill its obligations under [an] agreement" are not "within the purview of the ADTPA"). Because "a breach of contract, in and of itself, is not tortious," *id.* at 454, we agree with the district court that B & B has no cognizable tortious interference or ADTPA claims.

Finally, B & B requests vacatur of the attorney's fee award if the grant of summary judgment in Fastenal's favor is vacated. Because the grant of summary judgment must be affirmed and B & B makes no other challenge to the attorney's fee award, that award must be affirmed as well.

## III. Conclusion

For the foregoing reasons, we affirm the grant of summary judgment to Fastenal on all claims and the award of attorney's fees.

_____