Marie STRACENER and Teresa O'Neal *v.*
Thomas WILLIAMS, M.D.

CA 03-139                                                 137 S.W.3d 428

Court of Appeals of Arkansas
Division I
Opinion delivered December 10, 2003

[Petition for rehearing denied January 7, 2004.]

*Stephen M. Sharum*; and *The Boyd Law Firm*, by: *Charles Phillip Boyd, Jr.*, and *Robert W. Allen*, for appellants.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark* and *Sidney P. Davis, Jr.*, for appellees.

TERRY CRABTREE, Judge. This is a wrongful-death case. Marie Stracener and Teresa O'Neal, the co-administratrices of the Estate of Charles Stracener, bring this interlocutory appeal from the Sebastian County Circuit Court's dismissal of their fifth amended complaint, filed August 5, 2002, which added Sparks Regional Medical Center (Sparks) as an additional defendant in the action. Sparks was named as a defendant in the original complaint, but on June 29, 2001, it was dismissed without prejudice because of the charitable-immunity doctrine. Appellants argue that the trial court erred in refusing to apply the doctrine of equitable tolling to delay the running of the one-year saving statute, Ark. Code

Ann. § 16-56-126 (1987), so that the complaint filed on August 5, 2002, could be deemed timely. The question presented in this appeal is whether the trial court erred in refusing to apply that doctrine. We hold that it did not err, and we affirm.

## Procedural History

Mr. Stracener died on September 28, 1998, while he was a patient at Sparks. Alleging medical negligence, appellants filed a wrongful-death action on September 22, 2000, naming his physician, a registered nurse, Sparks, and others as defendants. In March 2001, Sparks's liability insurance carrier, Steadfast Insurance Company (Steadfast), was added as a defendant. In June 2001, Sparks moved to dismiss the complaint against it on the ground that it was a tort-immune entity, for which Steadfast was its proper substitute defendant. On June 29, 2001, the court entered an order dismissing Sparks as a defendant. The trial court denied appellants' subsequent motion to reconsider.

On May 9, 2002, the Arkansas Supreme Court decided *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002). According to the parties in this suit, that decision changed the legal community's basic assumptions about the charitable-immunity doctrine and the direct-action statute. The supreme court held that nonprofit corporate entities are not necessarily immune from suit for tort and that the direct-action statute, Ark. Code Ann. § 23-79-210 (Repl. 1999), provides only for direct actions against an insurer in the event that the organization at fault is immune from suit in tort. The court noted a distinction between immunity from *suit* and immunity from *liability*; it stated that immunity from suit is the entitlement not to stand trial, while immunity from liability is a mere defense to a suit. The court stated that it knew of no authority holding that all nonprofit corporations, by virtue of their status as nonprofit corporations, are immune from *suit* for tort.

The court also stated:

> However, we note that no allegations of fact were made in the pleadings that Forrester-Davis is or claimed to be a charitable organization. Our standard of review of this case is of the trial court's grant of Bankers's motion to dismiss, and, thus, our review is limited to the facts alleged in the pleadings. Because there was no allegation in the pleadings that Forrester-Davis is a charitable

organization, we conclude that the trial court did not err when it determined that Ark. Code Ann. § 23-79-210 is inapplicable to the facts of the present case.

However, we note that appellant's argument that Forrester-Davis is not subject to suit for tort because it is a charitable organization is meritless for another reason. We have never said that charitable organizations are altogether immune for *suit*. While we affirmed the trial court's dismissal of a case on the ground that the charitable organization was immune from *liability* in *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W. 2d 710 (1999), no argument was raised in that case that a charitable organization is not subject to *suit* for tort, as was argued in the present case. We have repeatedly stated that the property of a charity cannot be sold under *execution* issued on a judgment rendered for the nonfeasance, misfeasance, or malfeasance of its agents or trustees. *See, e.g., Fordyce & McKee v. Woman's Christian Nat'l Library Ass'n*, 79 Ark. 550, 96 S.W. 155 (1906) (emphasis added). We have also recognized that the charitable-immunity doctrine as promulgated in *Fordyce* and its progeny has become a rule of property. *See Williams v. Jefferson Hosp. Ass'n*, 246 Ark. 1231, 442 S.W.2d 243 (1969) (citing *Helton v. Sisters of Mercy*, 234 Ark. 76, 351 S.W.2d 129 (1961); *Cabbiness v. City of North Little Rock*, 228 Ark. 356, 307 S.W.2d 529 (1957); *Fordyce, supra*). In addition, we stated in *Crossett Health Center v. Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953), "Judge Rose, [in *Fordyce*], commented on the statutory authority for suit, drawing a distinction between the right to sue and the power to execute in satisfaction of the judgment." *Crosswell, supra* (citing *Fordyce, supra*). Our analysis indicates that a charitable organization may have suit brought against it and may have a judgment entered against it, but such judgment may not be executed against the property of the charity. We conclude that even if facts had been pled to allege that Forrester-Davis is a charitable organization, we would nevertheless affirm the trial court's finding that Ark. Code Ann. § 23-79-210 does not apply because we have never held that charitable organizations are completely immune from suit, but rather, we have only held that they are immune from execution against their property.

348 Ark. at 565-67, 75 S.W.3d at 179-80.

The issuance of the *Clayborn v. Bankers Standard Insurance Co.*, *supra*, decision directly affected this case. On August 5, 2002, appellants filed their fifth amended complaint, stating that, based

on the supreme court's decision in that case, it was necessary to rename Sparks as a defendant. On September 3, 2002, the trial court dismissed all complaints against Steadfast. Sparks then moved to dismiss the fifth amended complaint against it on the ground that it was time-barred because the one-year limit of the saving statute had elapsed. In response, appellants argued that the running of the one-year limitation of the saving statute should be equitably tolled to prevent unfairness in this case. They relied on the doctrine that, when a plaintiff has been prevented from asserting his rights by relying to his detriment on a statutory interpretation that is subsequently judicially overruled or substantially redefined, a technical forfeiture can be avoided by application of the doctrine of equitable tolling. *See Aljadir v. University of Pa.*, 547 F. Supp. 667 (E.D. Pa. 1982), *aff'd*, 709 F.2d 1490 (3d Cir. 1983); 51 AM. JUR. 2D *Limitation of Actions* § 174 (2000).

The trial court disagreed and, on October 14, 2002, dismissed Sparks from the lawsuit with prejudice. It stated:

> The Arkansas Supreme Court has found that when a defendant[']s Motion to Dismiss is granted, it is to be treated the same as a nonsuit and under the "saving statute" the Plaintiff has one year to commence another action or the cause of action is time-barred. *West v. G.D. Searle & Co.*, 317 Ark. 529 (1994). Since the dismissal was entered on June 28, 2001, Plaintiff had until June 28, 2002, to commence a new action against SRMC or else its cause of action would be time[-]barred. While this may be harsh under the circumstances of this case it should be pointed out that the *Clayborn* decision was rendered on May 9, 2002, and Plaintiffs still had approximately a month and a half to file their 5th Amended Complaint before the limitations period ran, but for whatever reason Plaintiffs failed to timely file it.

On November 25, 2002, the court entered an order *nunc pro tunc* that included the same findings and conclusions but also included a certification for an immediate appeal under Ark. R. Civ. P. 54.

### Argument on Appeal

On appeal, appellants argue that the running of the saving statute's one-year period should have been tolled between the time that Sparks was dismissed on June 29, 2001, and when the *Clayborn* case was decided on May 9, 2002. Under Ark. Code Ann.

§ 16-56-126, a plaintiff who has suffered a nonsuit may refile the suit within one year regardless of whether the statute of limitations would otherwise prevent institution of such suit. *Sanderson v. McCollum,* 82 Ark. App. 111, 112 S.W.3d 363 (2003); *Smith v. St. Paul Fire & Marine Ins. Co.,* 76 Ark. App. 264, 64 S.W.3d 764 (2001). For the purposes of the statute, a dismissal of a complaint on a defendant's motion is the same as a nonsuit. *West v. G.D. Searle & Co.,* 317 Ark. 525, 879 S.W.2d 412 (1994).

■ It is "hornbook law" that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the relevant statute. *Young v. United States,* 535 U.S. 43, 49 (2002). However, even in the case of fraudulent concealment, a litigant in Arkansas must show that he was reasonably diligent to take advantage of the doctrine of equitable tolling. *See Smith v. St. Paul Fire & Marine Ins. Co., supra.* Appellants point out that they relied upon the interpretation of the direct-action statute applied by "all courts and lawyers in Arkansas" and that, because the *Clayborn* decision changed the law, the doctrine of equitable tolling should be applied. Appellants apparently concede that they were charged with knowledge of the *Clayborn* decision when it was handed down on May 9, 2002. This concession, we believe, reveals the weakness of their argument. The supreme court's decision in *Clayborn* was available online to all attorneys and the general public immediately and, within a few weeks, it was published in the advance sheets.

■■ It is well settled that a simple lack of knowledge of a cause of action does not stop the statute of limitations from running. *See Courtney v. First Nat'l Bank,* 300 Ark. 498, 780 S.W.2d 536 (1989). It is also well settled that, ordinarily, the acts of an attorney are equivalent to the acts of the client. *Scarlett v. Rose Care, Inc.,* 328 Ark. 672, 944 S.W.2d 545 (1997). Rule 1.3 of the Model Rules of Professional Conduct states: "A lawyer shall act with reasonable diligence and promptness in representing a client." *See also Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997).

■■ Reasonable diligence is essential in the context of equitable tolling. 54 C.J.S. *Limitations of Actions* § 87 provides in part:

> One who asserts a cause of action against another has a duty to use all reasonable diligence necessary to inform himself of facts and

circumstances upon which the right of recovery is based, and to institute the suit within the statutory period; however, a plaintiff need not establish that he exercised due diligence to discover the facts within the limitations period unless he is under a duty to inquire and the circumstances are such that failure to inquire would be negligent.

Generally, a party cannot avoid the bar of the statute of limitations if he had the means to discover the facts giving rise to his action. The statute of limitations will be tolled only for one who remained ignorant through no fault of his own. One who asserts a cause of action against another has a duty to use all reasonable diligence necessary to inform himself of facts and circumstances upon which the right of recovery is based, and to institute the suit within the statutory period. If he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired, had he made the necessary effort to learn the truth of the matters affecting his interests.

■ The trial court did not believe that appellants' attorney acted with reasonable diligence in filing the fifth amended complaint, and we cannot disagree. Appellants had approximately seven weeks within which to rename Sparks as a defendant. Given the facts presented, we cannot say that the trial court erred in refusing to find that appellants' attorney was sufficiently diligent so as to merit the application of the doctrine of equitable tolling.[1]

Affirmed.

GRIFFEN and NEAL, JJ., agree.

---

[1] Appellants also argue that *Clayborn v. Bankers Standard Insurance Co.* should not be given retrospective application because they justifiably relied on prior case law. This argument does not advance appellants' position. Even giving *Clayborn* a prospective application, appellants had a month and a half within which to refile their complaint against Sparks.