HEALTH RESOURCES of ARKANSAS, INC. *v.*
Fran FLENER, as Executrix of the Estate
of William C. Huddleston

08-177                                    286 S.W.3d 704

Supreme Court of Arkansas
Opinion delivered September 11, 2008

*Cross, Gunter, Witherspoon & Galchus, P.A.*, by: *Allen C. Dobson*, for appellant.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Tom Thompson* and *Casey Castleberry*, for appellee.

PAUL E. DANIELSON, Justice. Appellant Health Resources of Arkansas, Inc., appeals from the circuit court's order granting appellee Fran Flener's motion for summary judgment. Ms. Flener is the surviving spouse of William C. Huddleston and serves as the executrix of his estate. In its order, the circuit court found that Health Resources was obligated to pay the estate of William C. Huddleston certain benefits from one of its personnel policies, the "Vacation/Retirement Pay" policy. We hold that the policy was not intended to provide a death benefit and, therefore, we reverse and remand the order of the circuit court.

The material facts are undisputed by the parties. William C. Huddleston served as the Chief Executive Officer of both Health Resources and Arkansas Affordable Housing, Inc., before he died on May 11, 2005. At the time of his death, he had been a full-time employee of Health Resources for thirty-one years. After Huddleston's death, Ms. Flener sought to recover vacation/retirement pay and death benefits on behalf of Huddleston arising from certain personnel policies that were in effect at Health Resources. While Health Resources paid the death benefits owed to Huddleston's estate, it denied Ms. Flener's request for Huddleston's vacation/retirement pay, explaining that the vacation/retirement pay policy was not applicable to Huddleston as he did not retire.

Ms. Flener filed a complaint, and later an amended complaint, against Health Resources and Arkansas Affordable Hous-

ing, Inc., alleging breach of contract with regard to Health Resources's vacation/retirement pay policy. However, because the alleged breach arose solely from Health Resources's personnel policies, Ms. Flener filed a motion to voluntarily dismiss Arkansas Affordable Housing, Inc., which the circuit court granted on August 21, 2007. Both Health Resources and Ms. Flener then moved for summary judgment. On September 24, 2007, the circuit court held a hearing on the motions. The circuit court denied Health Resources's motion for summary judgment and granted Ms. Flener's motion for summary judgment on November 1, 2007. Health Resources now appeals.

First, Health Resources argues that their vacation/retirement pay policy is not payable upon death of an employee; rather, as understood by the plain language of the policy, that particular pay policy is conditioned upon an eligible employee's retirement to provide a supplement to their retirement benefits. Health Resources asserts that, reading the personnel policies as a whole, it is clear that the Universal Life Insurance policy is the policy that was created to be payable to either a retiring employee or the employee's estate upon death, while the vacation/retirement pay applies only to qualified employees who are retiring. Therefore, Health Resources concludes that the circuit court erred in granting Ms. Flener's motion for summary judgment and instructing it to pay additional benefits to Huddleston's estate.

Ms. Flener responds that Huddleston "retired" upon his death on May 11, 2005, and had previously earned the vacation/retirement pay. In addition, Ms. Flener asserts that the vacation/retirement pay provision should not be interpreted as inapplicable in the event of death simply because other policy provisions do specifically refer to payments upon death and this policy does not.

The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Stromwall v. Van Hoose*, 371 Ark. 267, 265 S.W.3d 93 (2007). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of

the motion leave a material fact unanswered. *See id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *See id.* Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *See id.*

The facts here are undisputed by the parties. As there is not a genuine issue of material fact, the case was appropriately determined as a matter of law. Therefore, the issue here is whether summary judgment was granted in favor of the correct party based upon the interpretation of the pertinent personnel policies that were in effect at Health Resources at the time of Huddleston's death.

The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. *See Alexander v. McEwen*, 367 Ark. 241, 239 S.W.3d 519 (2006). In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *See id.* "The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it." *Coleman v. Regions Bank*, 364 Ark. 60, 65, 216 S.W.3d 569, 574 (2005) (citing *Missouri Pac. R.R. Co. v. Strohacker*, 202 Ark. 645, 152 S.W.2d 557 (1941)). It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered not from particular words and phrases, but from the whole context of the agreement. *See Alexander, supra.*

The pertinent personnel policies that were in effect at the time of Huddleston's death provide:

> **Vacation/Retirement Pay:** When a full time employee of the Corporation achieves twenty (20) continuous years of employment with the Corporation, the employee will begin to earn vacation/ retirement pay at the rate of one (1) month of pay for each full, continuous year of employment with the Corporation beyond twenty (20) years up to a maximum of 12 months (One year). This pay will be at the rate being paid the employee at the time of retirement. Payments on this pay will be made on a monthly basis to the employee beginning with retirement. These special benefits will be in addition to the regular vacation earned by each employee

of the Corporation. Of course, any employee who is ready for retirement will remain on the payroll until all of the vacation benefits are used. No accrual of leave will occur after an employee begins to use this special retirement benefit. This will enable an individual to delay as long as possible in starting their Pension, Social Security and other retirement benefits. Such a delay gives the benefits a longer time to grow. The maximum that can be achieved under this plan would be 12 months.

The effective date of coverage or inclusion in the above programs is the date of actually starting to work, or the date pay is started.

## Universal Life Insurance

Full time employees (if insurable) who complete fifteen years of continuous full time employment will be provided with a universal life insurance benefit equal to four times the employee's annual salary at the time of eligibility. There will be a minimum of $50,000 and a maximum of $300,000 on these policies. The policy will belong to the Corporation. This type of policy will accumulate cash value and the Corporation will own this cash. The Corporation will pay the employee or, if deceased, her/his estate, from the proceeds of this policy as follows:

1. If the employee retires (age 62 years or over), or retires any time after the completion of 25 continuous years of employment, the Corporation will pay the employee (or estate if death occurs after retirement) one fortieth (1/40th) of the cash value of the policy each quarter for ten (10) years. These will be quarterly payments that will begin as soon after retirement as the cash value of the policy is forthcoming from the insurance company.

2. If the employee dies before retirement then the Corporation will pay the estate of the employee one fortieth (1/40th) of the funds received from the death benefit of the policy each quarter for ten (10) years. These will be quarterly payments that will begin as soon after the employee's death as the death benefit is received by the Corporation from the insurance company.

Two important terms are used throughout the vacation/retirement pay policy — *retirement* and *employee*. The policy clearly explains that this *special retirement benefit* will be calculated using the rate being paid to the *employee at the time of*

*retirement.* It further states that payments to the *employee* will begin *with retirement.* While Ms. Flener argues that Huddleston "retired on May 11, 2005, both figuratively and literally" upon his death, her interpretation goes against the plain language rule by equating death with retirement.

■    Furthermore, when considering the meaning that the parties intended to convey from the language used, Ms. Flener's interpretation is not the most applicable. As previously noted, the intention of the parties is to be gathered not from particular words and phrases, but from the whole context of the agreement. *See Alexander, supra.* Other provisions of the personnel policies, more specifically, the Universal Life Insurance provision, include additional language clarifying that payment is to be made upon retirement *or* death. Had Health Resources intended that the vacation/retirement pay also be payable upon death, it surely would have included similar language under that provision.

■    It is clear from the plain and ordinary meaning of the language used in the vacation/retirement pay policy that Huddleston's employment beyond the twenty years described in the policy had vested him with certain benefits. However, those benefits were only to mature upon his retirement. This concept is explained in 70 C.J.S. *Pensions* § 4 (2005):

> Ordinarily, "vesting" refers to the provision in a retirement plan whereby a member's right to benefits becomes effective upon the fulfillment of specified qualifying conditions, such as service for a certain period of time, which right is not forfeited by separation from service prior to the prescribed age for retirement.
>
> A vested pension right must be distinguished from a "matured" or unconditional right to immediate payment. Depending upon the provisions of the retirement program, an employee's right may vest after a term of service even though it does not mature until the employee reaches retirement age and elects to retire. Such vested but immature rights are frequently subject to the condition, among others, that the employee survive until retirement.
>
> If a plan participant has a current right to the benefits, they are known as "mature" benefits. Although a pension is vested, until an employee satisfies all of the conditions for receipt of benefits, the pension is classified as vested but immature. However, once the employee satisfies the conditions, the employee's pension matures, that is, the employee has an immediate right to the benefits.

Because Huddleston did not retire, his right to the benefits under the vacation/retirement pay policy never matured. Therefore, the circuit court erred by granting summary judgment in favor of Ms. Flener, and we reverse and remand for entry of an order consistent with this opinion. Because the issue on appeal is clearly resolved by our interpretation of the policy, we do not address the additional arguments raised by the appellant.

Reversed and remanded.

GLAZE, J., not participating.