June D. SCAMARDO *v.*
SPARKS REGIONAL MEDICAL CENTER

08-820                                                    289 S.W.3d 903

Supreme Court of Arkansas
Opinion delivered December 19, 2008

*Law Offices of Charles Karr, P.A.*, by: *Charles Karr*, for appellant.

*Davis, Wright, Clark, Butt & Carithers, PLC*, by: *Constance G. Clark* and *Sidney P. Davis, Jr.*, for appellee.

ELANA CUNNINGHAM WILLS, Justice. June Scamardo appeals the order of the Sebastian County Circuit Court granting summary judgment in favor of Sparks Regional Medical Center (Sparks). On appeal, Scamardo argues that the circuit court erred in refusing to apply the law of the case doctrine to preclude the motion for summary judgment filed by Sparks. Scamardo also contends that the trial court erred in holding that Sparks was entitled to charitable immunity and in refusing to rule that the charitable immunity doctrine should be abolished. Finally, Scamardo asserts that the circuit court erred in finding Rule 56 of the Arkansas Rules of Civil Procedure constitutional. We find no error and affirm.

This is the second time these parties have been before this court. In November 2002, Scamardo filed a medical negligence action against Sparks, Dr. Robert Jaggers, and Sparks's liability insurer, Steadfast Insurance Company (Steadfast). Under Arkansas case law governing the charitable immunity doctrine before May 2002, a plaintiff could only file an action against a qualified charitable entity by filing the action directly against the entity's insurer under the direct action statute, Ark. Code Ann. § 23-79-210. *See George v. Jefferson Hosp. Ass'n Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999). This state of the law changed with the decision in *Clayborn v. Bankers Standard Insurance Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002), where the court distinguished immunity from suit and immunity from liability, holding that immunity from suit means that an entity is not required to stand trial *at all*, but

immunity from liability is only a *defense* to a suit. Therefore, under *Clayborn*, the Arkansas direct-action statute — Ark. Code Ann. § 23-79-210 — only provided for direct action against a liability insurer if the insured entity was immune from suit in tort. *Id.* In *Clayborn*, this court specifically stated that it had "never said that charitable organizations are altogether immune from *suit*." *Id.* at 566, 75 S.W.3d at 179 (emphasis in original). Citing this court's precedent in *Clayborn*, the liability insurer in this case, Steadfast, filed a motion to dismiss Scamardo's complaint, contending that·it was not a proper party defendant.

Scamardo appealed from the circuit court's order granting Steadfast's motion to dismiss. This court affirmed the circuit court's order in *Scamardo v. Jaggers*, 356 Ark. 236, 149 S.W.3d 311 (2004) (*Scamardo I*), declining to overrule *Clayborn*, and noting that "the losing party's insurer (here, Steadfast) can be bound to pay up to its policy limits any judgment entered against the nonprofit entity (Sparks)." *Scamardo I*, 356 Ark. at 247, 149 S.W.3d at 318. However, "the prevailing party in a lawsuit against the nonprofit may not execute on the property or assets of the nonprofit to satisfy any judgment." *Id.*

Scamardo voluntarily nonsuited her claims against Sparks and Dr. Jaggers a little more than a year after the decision in *Scamardo I*. Approximately nine months later, this court overruled both *Clayborn* and *Scamardo I* in *Low v. Insurance Co. of North America*, 364 Ark. 427, 220 S.W.3d 670 (2005). This court held that the direct action statute and the charitable immunity doctrine required a tort action to be filed directly against the entity's insurer, because a charitable entity is *completely* immune from suit and cannot be named as a defendant. Several months after *Low* was handed down, Scamardo refiled her claims against Sparks and Dr. Jaggers under the one-year savings statue — Ark. Code Ann. § 16-56-125(a)(1) (Repl. 2005), and several unnamed defendants, but failed to name Steadfast as a defendant. Sparks filed an answer to Scamardo's complaint, arguing that it was a nonprofit hospital and immune from suit under the charitable immunity doctrine, and, therefore, not a proper party defendant. Sparks subsequently filed a motion for summary judgment, alleging that it qualified for charitable immunity under the eight factors listed in *George, supra*, and arguing that it was not a proper party defendant. The circuit court granted this motion, dismissing Scamardo's complaint with prejudice. Additionally, the circuit court granted a motion filed by Scamardo to dismiss with prejudice her claims against Dr. Jaggers

and the unnamed defendants, all of whom had never been served with process in the action. Scamardo now appeals the circuit court's order granting summary judgment in favor of Sparks.

Summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *See Health Res. of Ark., Inc. v. Flener*, 374 Ark. 208, 286 S.W.3d 704 (2008). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* The court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* The appellate court's review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties. *Id.*

Scamardo first argues that the circuit court erred by granting Sparks's motion for summary judgment because the law of the case doctrine precluded Sparks from arguing that Scamardo's refiled complaint against it was barred by the doctrine of charitable immunity. Specifically, Scamardo argues that the law of the case doctrine applies because "Sparks took the position in *Scamardo I* that it was not immune from suit and that its insurance carrier was not subject to suit under the direct action statute." Accordingly, Scamardo contends, Sparks should not be allowed "to take inconsistent positions in *Scamardo I* and *Scamardo II* and win on each of them."[1]

This court discussed the law of the case doctrine in *R.K. Enterprises, LLC v. Pro-Comp Management, Inc.*, 372 Ark. 199, 203, 272 S.W.3d 85, 88 (2008), stating as follows:

> [T]he law-of-the-case doctrine . . . "prohibits a court from reconsidering issues of law and fact that have already been decided in a

---

[1] Sparks's answer to the first complaint asserted the defense of charitable immunity, but admitting that, although it was immune from any execution against its assets, it was not immune from suit based on the holding in *Clayborn, supra.* In its answer to Scamardo's refiled complaint, it stated that it was protected by the charitable immunity doctrine and not a proper party defendant.

prior appeal." *Byrne, Inc. v. Ivy*, 367 Ark. 451, 457, 241 S.W.3d 229, 235 (2006). This court has explained that "[o]n second appeal, . . . the decision of the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal, and also of those which might have been, but were not, presented." *Vandiver v. Banks*, 331 Ark. 386, 391, 962 S.W.2d 349, 352 (1998) (quoting *Mercantile First Nat'l Bank v. Lee*, 31 Ark. App. 169, 173, 790 S.W.2d 916, 919 (1990)). Stated differently, "[t]he doctrine of the law of the case . . . prevents an issue raised in a prior appeal from being raised in a subsequent appeal unless the evidence materially varies between the two appeals." *Vandiver*, 331 Ark. at 391-92, 962 S.W.2d at 352.

There is an exception to the law of the case doctrine in this instance. *Scamardo I* has been overruled. An appellate decision, once overruled, is normally treated as if it had never been. *Felton v. Rebasmen Med. Ctr.*, 373 Ark. 472, 284 S.W.3d 486 (2008). We have, therefore, made an exception to the law of the case doctrine in the particular context of overruled decisions. *See Washington v. State*, 278 Ark. 5, 643 S.W.2d 255 (1982) (the doctrine of law of the case was inapplicable where, during the interim between the decision in the first appeal and retrial, the first decision had been overruled by other later cases); *Am. Ry. Express Co. v. Davis*, 158 Ark. 493, 250 S.W. 540 (1923) (decision of Arkansas Supreme Court on first appeal was no longer the "law of the case" on the second appeal, where in the meantime the United States Supreme Court decision followed previously had been overruled).

As a consequence, *Scamardo I* was not the law of the case and did not prevent the circuit court from applying the *Low* decision, or from reaching the question of Sparks' entitlement to charitable immunity. *See, e.g., Anglin v. Johnson Reg'l Med. Ctr.*, 375 Ark. 10, 289 S.W.3d 28 (2008) (plaintiff could not prevail where he had months after the decision in *Low, supra*, to properly name the insurance company and failed to do so); *Felton, supra; cf. Stracener v. Williams*, 84 Ark. App. 208, 137 S.W.3d 428 (2003) (plaintiffs could not prevail under prior law where they failed to amend their complaint after *Clayborn* within the one-year savings statute, and did not act diligently for purposes of the doctrine of equitable tolling).

Turning to the question of Sparks's entitlement to charitable immunity, Scamardo argues that "Sparks does not qualify for the charitable immunity defense because it was not

created and maintained exclusively for charity." In *George, supra*, this court listed eight factors to aid in determining whether an entity is entitled to charitable immunity:

> (1) whether the organization's charter limits it to charitable or eleemosynary purposes; (2) whether the organization's charter contains a "not-for-profit" limitation; (3) whether the organization's goal is to break even; (4) whether the organization earned a profit; (5) whether any profit or surplus must be used for charitable or eleemosynary purposes; (6) whether the organization depends on contributions and donations for its existence; (7) whether the organization provides its services free of charge to those unable to pay; and (8) whether the directors and officers receive compensation.

*Id*. at 211-12, 987 S.W.2d at 713. These eight factors are "illustrative, not exhaustive, and no single factor is dispositive of charitable status." *Id*. (citing *Ouachita Wilderness Inst. v. Mergen*, 329 Ark. 405, 947 S.W.2d 780 (1997)).

■ Review of the evidence in the record shows that Sparks meets six of the eight factors listed in *George*. The first and second factors are satisfied by Sparks's Articles of Incorporation, which show that Sparks is "a public benefit corporation" under the provisions of the Arkansas Nonprofit Corporation Act of 1993, and that it is "organized, pledges its assets to, and shall be operated exclusively for charitable, scientific, and educational purposes."

■ In a sworn affidavit filed with Sparks's motion for summary judgment, Dan Hamman, Chief Financial Officer for Sparks, stated that forms filed with the Internal Revenue Service show that the Sparks's operating margin in 2007 was 0.8% and 0.3% in 2006, indicating a loss from operations. The affidavit also provided that any surplus of funds received by Sparks is used to maintain its "charitable community benefit of providing medical assistance to the public." Further, the affidavit provided evidence that Sparks provided services and care to persons unable to pay in 2007 totaling $7,562,627, and that under its Charity Care policy, Sparks provides services free of charge to patients unable to pay at the same level of care provided to those who are able to pay. Additionally, the reimbursement provided by Medicare and Medicaid to Sparks was approximately $4.2 million under cost, and

Sparks considers this amount to constitute additional charity care. Accordingly there was evidence that Sparks met the third, fourth, fifth, and seventh factors.

As to the sixth factor, although Sparks receives contributions and donations, most of its operating funds are provided through Medicare, Medicaid, and individual patients and/or the patients' private insurers. In *George*, this court noted that the nonprofit hospital at issue there only received donations totaling approximately 6% of its financial obligations, but stated that "a modern hospital, with rare exception, would find it extremely difficult to operate wholly or predominately on charitable donations." *George, supra*, 337 Ark. at 214, 987 S.W.2d at 714. As was the case in *George*, the fact that Sparks receives most of its funding through sources other than contributions or donations does not "negate its overriding charitable purpose." *Id.*

The eighth factor listed in *George* concerns an organization's compensation to directors and officers. Article IX of Sparks's Articles of Incorporation provides that "[t]he Corporation shall not have or issue shares of stock and no dividends shall be paid and no part of the income of the Corporation shall be distributed to its members, directors, and officers." It is undisputed that Sparks's Chief Executive Officer receives approximately $350,000 per year in compensation, and that the next two ranking officers receive approximately $250,000 and $230,000 respectively. Although Scamardo argues that such compensation is evidence that Sparks is "big business" rather than a charitable nonprofit, this court addressed and rejected the same argument in *George*, stating:

> it is not necessary for charitable organizations to have entirely volunteer staff and management. [Jefferson Regional Medical Center's] size and complexity make knowledgeable, well-qualified personnel essential. Such persons do not readily volunteer their services or serve at rates of compensation markedly lower than market rates.

337 Ark. at 214, 987 S.W.2d at 714. Similarly here, such compensation for the senior administrative positions required to manage Sparks "does not put the hospital in the position of being maintained for private gain, profit, or advantage of its organizers." *Id.*

■ Based on the totality of the evidence shown in the record, circumstances, and the factors this court has adopted to help determine whether an organization is entitled to charitable immunity, the trial court did not err in granting Sparks's motion for summary judgment. Although Scamardo asserts that these are questions of fact for a jury to decide, in *George* this court addressed this argument, stating:

> We disagree. While there may be fact issues involved, they are not matters of disputed fact. Rather, they are differing legal interpretations of undisputed facts. In such cases, the appellate court should grant summary judgment where reasonable persons would not reach different conclusions based upon those undisputed facts.

*Id.* at 212-13, 987 S.W.2d at 713. Additionally, Scamardo argues that the charitable immunity doctrine should be abolished. Abolishment of charitable immunity is a public policy decision, and this court has repeatedly stated that public policy is for the General Assembly to decide, not the courts. *Med. Liab. Mut. Ins. Co. v. Alan Curtis Enters., Inc.*, 373 Ark. 525, 285 S.W.3d 233 (2008).

■ Finally, Scamardo argues that Arkansas Rule of Civil Procedure 56 is unconstitutional, because it denies her the right to a jury trial. This court recently examined and rejected this argument in *Anglin*, 375 Ark. at 21, 289 S.W.3d at 36, holding that "where there is no factual dispute, there is no constitutional right to a trial by jury." Here, as noted above, there are no factual disputes; instead, there are differing legal interpretations of undisputed facts.

Affirmed.

BROWN, J., concurs.